# United States Court of Appeals for the Federal Circuit

---

**GILBERT P. HYATT,**
*Plaintiff-Appellant*

v.

**UNITED STATES PATENT AND TRADEMARK OFFICE, MICHELLE K. LEE, DIRECTOR, U.S. PATENT AND TRADEMARK OFFICE, IN HER OFFICIAL CAPACITY,**
*Defendants-Appellees*

---

2014-1596

---

Appeal from the United States District Court for the Eastern District of Virginia in No. 1:13-cv-01535-CMH-TRJ, Senior Judge Claude M. Hilton.

---

Decided: August 20, 2015

---

AARON M. PANNER, Kellogg, Huber, Hansen, Todd, Evans & Figel, PLLC, Washington, DC, argued for plaintiff-appellant. Also represented by MELANIE L. BOSTWICK.

MARK R. FREEMAN, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for defendants-appellees. Also represented by SCOTT R. MCINTOSH, JOYCE R. BRANDA; NATHAN K. KELLEY, BRIAN THOMAS RACILLA, MOLLY R. SILFEN, Office

of the Solicitor, United States Patent and Trademark
Office, Alexandria, VA; DANA J. BOENTE, ANTONIA
KONKOLY, Office of the United States Attorney for the
Eastern District of Virginia, Alexandria, VA.

————————————

Before MOORE, MAYER, and LINN, *Circuit Judges.*

MOORE, *Circuit Judge.*

Gilbert P. Hyatt appeals from the district court's deci-
sion that it lacked subject matter jurisdiction over his
Administrative Procedure Act ("APA") claims against the
Patent and Trademark Office ("PTO") and its acting
Director under 5 U.S.C. § 701(a)(2) and, alternatively,
that the PTO would have been entitled to summary
judgment for these claims.  For the reasons discussed
below, we *affirm* the district court's alternative holding
that the PTO would have been entitled to summary
judgment.

## BACKGROUND

Mr. Hyatt is the named inventor on at least 75 issued
patents and nearly 400 pending patent applications, all of
which were filed on or before June 8, 1995.[1]  Because

————————————

[1]    The number and filing dates of Mr. Hyatt's appli-
cations and the total number of his pending claims are
publicly available. *See Hyatt v. U.S. Patent & Trademark
Office*, No. 1:13-CV-1535, 2014 WL 2446176, at *1 (E.D.
Va. May 29, 2014); *see also* Innovation Act: Hearing
Before H. Comm. on the Judiciary, 113th Cong. 231–44
(2014), *available at* http://judiciary.house.gov/_cache/files/
dbb6055f-dffd-4b88-ab5e-20fc7767ed06/113-58-a85281.pdf
(letter published by the House Judiciary Committee
identifying by inventor name, filing date, and serial

Mr. Hyatt's pending applications were filed before the effective date of the Uruguay Round Agreements Act, any patent issuing from the pending applications will have a term of seventeen years from the date of issuance. *See* 35 U.S.C. § 154 (1994); *see also* Uruguay Round Agreements Act, Pub. L. No. 103-465, § 532(a), 108 Stat. 4809, 4983–85 (1994). Each of Mr. Hyatt's pending applications incorporates by reference, and claims the benefit of priority from, a network of earlier-filed applications dating back to the 1970s.

Mr. Hyatt's pending applications feature extremely large claim sets, containing, on average, 116 independent claims and 299 total claims. The PTO estimated that these applications include 45,000 independent claims and 115,000 total claims when combined. Despite the remarkable number of claims, these applications consist of only 12 distinct specifications. Application number 05/849,812 illustrates the complexity of Mr. Hyatt's web of pending applications. The '812 application claims priority from 20 earlier-filed applications, and is itself the parent of 112 continuing applications. It contains 130 independent claims and 315 total claims, and is one of 18 applications sharing a common specification, which together contain 2,160 independent claims.

In August 2013, the PTO began to issue formal office actions, called "Requirements," corresponding to Mr. Hyatt's "families" of applications having a common specification. Each Requirement addresses one family and is copied into the file of each application within the family. Generally, each Requirement requires Mr. Hyatt to: 1) select a number of claims from that family for prosecution, not to exceed 600 absent a showing that more

---

number the 482 pending patent applications filed before June 8, 1995).

claims are necessary; 2) identify the earliest applicable priority date and supporting disclosure for each selected claim; and 3) present a copy of the selected claims to the PTO.   Although each Requirement is entered in the prosecution history of a particular patent application, it also contains information about other patent applications in that family.  Much of this information is included in the context of explaining the PTO's decision to impose on Mr. Hyatt the obligations outlined in the Requirements. For example, the Requirement for the '812 application contains information about pending patent applications from the same family as the '812 application.  It identifies the filing date and serial number of many other pending applications, including all of the applications in the same family as the '812 application.  It describes the priority relationships between the applications in the family and with other patent applications.  It lists the number of total claims and independent claims of every application in the family, as well as the total estimated number of claims in all of Mr. Hyatt's applications.  It describes the prosecution history of other applications in the family, including information about the substance of several amendments to the applications.  And, in a table that spans 18 pages, it quotes the full text of dozens of claims from applications in the family.

The prosecution histories of most of Mr. Hyatt's pending applications include a Requirement corresponding to that application's family.  In the ordinary course of examination, the prosecution history of an application remains confidential until the application itself issues as a patent or an issued patent claims priority from the application.[2]

---

[2]    35 U.S.C. § 122(b)(1)(A), which provides for the publication of certain patent applications 18 months after filing, was enacted by Congress in 1999 and only applies

*See* 37 C.F.R. § 1.11(a) ("Rule 11(a)") (covering the publication of PTO records and files); *id.* § 1.14(a)(1)(v) ("Rule 14(a)(1)(v)") (covering the disclosure of parent applications). Thus, the Requirements attached to pending applications that are not parents to issued patents will remain confidential. However, in a few cases, including the '812 application, an issued patent claims priority from one of Mr. Hyatt's pending applications.[3] Requirements copied into the prosecution history of these applications will become publicly available in the ordinary course of examination, pursuant to Rule 14(a)(1)(v).[4] The disclosure of these Requirements will result in the disclosure of otherwise-confidential information about other, non-public applications.

In response to the PTO's issuance of the Requirements, Mr. Hyatt filed a series of petitions at the PTO seeking to expunge the confidential information in the Requirements. In these petitions, Mr. Hyatt relies on 35 U.S.C. § 122(a),[5] which provides that the PTO shall keep applications confidential unless "necessary to carry out the provisions of an Act of Congress or in such special circumstances as may be determined by the Director." The Director denied Mr. Hyatt's petitions, declaring it "necessary for proper examination of [Mr. Hyatt's] appli-

---

to patent applications filed on or after November 9, 2000. The parties agree that this section is inapplicable to Mr. Hyatt's pending patent applications, which were all filed before June 8, 1995.

[3] Other examples include application numbers 06/848,017; 07/493,061; 07/763,395; and 08/285,669.

[4] At Mr. Hyatt's request, the PTO has agreed to keep these Requirements confidential pending the outcome of this litigation.

[5] As discussed *supra* note 2, § 122(b)(1)(A) is inapplicable to Mr. Hyatt's pending patent applications.

cations under 35 U.S.C. § 131" to include the otherwise-confidential information in the Requirements. J.A. 234. She also stated that "the circumstances surrounding these applications, including the number of related applications filed, the number of claims filed, and the number of applications to which benefit of priority is claimed, qualify as 'special circumstances' under section 122." *Id.* She wrote that the Requirements attached to already-published applications that were parents to issued patents (including the '812 application) would be made public within 60 days.

Shortly afterwards, Mr. Hyatt filed claims in the Eastern District of Virginia against the PTO and its acting Director, in her official capacity, under the APA, 5 U.S.C. §§ 702, 706. Mr. Hyatt alleged that disclosure of the Requirements would violate § 122(a) by disclosing confidential information about Mr. Hyatt's non-public patent applications.

On the PTO's motion, the district court dismissed Mr. Hyatt's complaint for lack of subject matter jurisdiction under 5 U.S.C. § 701(a)(2), holding that there was no "judicially manageable standard of review" under which it could assess the PTO's decision to issue the Requirements. *Hyatt*, 2014 WL 2446176, at *3. In the alternative, the district court held that § 122 did not prohibit the disclosure of the Requirements, such that the PTO would be entitled to summary judgment. First, it reasoned that the information in the Requirements was necessary to carry out the provisions of an Act of Congress, particularly § 131, which provides that the Director "shall cause an examination to be made" of properly filed patent applications. *Id.* at *5–6. Second, it found that there was no genuine dispute that the "extraordinary" nature and prosecution history of Mr. Hyatt's applications constituted "special circumstances," warranting publication of the

Requirements. *Id.* at *6. Mr. Hyatt appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's decision to dismiss for lack of subject matter jurisdiction de novo. *Pennington Seed, Inc. v. Produce Exch. No. 299*, 457 F.3d 1334, 1338 (Fed. Cir. 2006). We review a district court's grant of summary judgment de novo, under the same standards applied by the district court. *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005). In an APA challenge, we consider whether the PTO's actions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *Id.* (citing 5 U.S.C. § 706(2)).

Mr. Hyatt argues that the PTO's publication of the Requirements would violate § 122(a), because it would result in the disclosure of confidential information about his non-public pending applications. The PTO argues that § 122(a), which allows the Director to disclose information concerning pending patent applications where "necessary to carry out the provisions of an Act of Congress or in such special circumstances as may be determined by the Director," commits to the Director's discretion the authority to determine whether "special circumstances" exist. The PTO asserts that agency determinations of this type lie outside of the scope of the APA. Alternatively, it argues that the Director correctly determined that "special circumstances" exist and that the disclosure of the Requirements is necessary to carry out the provisions of an Act of Congress.

I.      Reviewability of Director's "Special Circumstances" Determination

There is a "strong presumption" favoring judicial review of agency actions. *Bowen v. Mich. Acad. of Family Physicians*, 476 U.S. 667, 670 (1986). However, this

presumption can be rebutted if "a statute's language or structure demonstrates that Congress wanted [the] agency to police its own conduct." *Mach Mining, LLC v. E.E.O.C.*, 135 S. Ct. 1645, 1651 (2015) (citing *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 349 (1984)). For example, § 701(a)(2) of the APA precludes judicial review where "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This "very narrow exception" to the presumption of judicial review is applicable only "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply.'" *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 79-752, at 26 (1945)).

Section 122(a) lays out a broad rule prohibiting the disclosure of patent applications, subject to two exceptions:

> Applications for patents shall be kept in confidence by the [PTO] and no information concerning the same given without authority of the applicant or owner unless necessary to carry out the provisions of an Act of Congress or in such special circumstances as may be determined by the Director.

Thus, applications may be disclosed only if (1) the disclosure is "necessary to carry out the provisions of an Act of Congress" or (2) there are "such special circumstances as may be determined by the Director." § 122(a).

The PTO argues that Congress vested consideration of the second of these two exceptions—the "special circumstances" inquiry—in the Director alone, thereby committing it to agency discretion by law. According to the PTO, this statutory language "fairly exudes deference" and "foreclose[s] the application of any meaningful judicial standard of review." Appellees' Br. 23 (quoting *Webster v. Doe*, 486 U.S. 592, 600 (1988) (alterations in Appellees' Br.)). The PTO also argues that there is no meaningful

standard for reviewing the Director's determination that particular circumstances qualify as special. It notes, for example, that § 122(a) does not require the Director to consider particular factors, find specific facts, or create an evidentiary record. Thus, the PTO concludes that § 701(a)(2) of the APA precludes judicial review of the Director's determination that "special circumstances" justify the disclosure of certain Requirements.

### A. Language and Structure of § 122(a)

The structure of § 122(a) reflects Congress' intent to protect the confidentiality of patent applications. The statute begins by stating that "[a]pplications for patents shall be kept in confidence by the [PTO] and no information concerning the same given . . . ." § 122(a). The "shall" makes this language mandatory, not discretionary. *Mach Mining*, 135 S. Ct. at 1651; *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109 (2002). The statute then lays out only two exceptions to its general bar on disclosure. The first exception permits disclosure only when it is "necessary to carry out the provisions of an Act of Congress." § 122(a). Because this exception is limited to disclosures that are "necessary" to carry out a Congressional mandate, it is narrow and affords no agency discretion. In light of this statutory structure, it would be odd if the second exception was broad, sweeping, or unbounded. The language of the second exception supports our conclusion that the PTO's determination is reviewable. The PTO is not free to disclose confidential information whenever it chooses, or at its discretion; rather, it may disclose confidential information only in "such special circumstances as may be determined by the Director." *Id.* We conclude that the structure and language of this statutory section indicate that Congress intended the exceptions to confidentiality to be narrow and reviewable.

Where courts have previously held laws unreviewable under § 701(a)(2), those laws differed from § 122(a) in important ways. While the language of the statute at issue in *Webster* is close to the language of § 122(a), there are significant distinctions. In *Webster*, the Supreme Court considered § 102(c) of the National Security Act ("NSA"), which permitted the CIA Director, "in his discretion," to terminate an employee "whenever he shall deem such termination necessary or advisable in the interests of the United States." 486 U.S. at 600 (quoting 50 U.S.C. § 403(c) (1982)). Unlike § 102(c) of the NSA, § 122(a) does not implicate the nation's security. *Cf. id.* at 601 (noting that the overall history and structure of the NSA exhibit its "extraordinary deference to the Director," and that "the [CIA's] efficacy, and the Nation's security, depend in large measure on the reliability and trustworthiness of the Agency's employees"). Congress often grants an agency acting in the interest of national security more discretion, so that decision-makers at the agency are able to act in ways that will best protect the safety of the public. Moreover, unlike the statute at issue in *Webster*, § 122(a) does not "exude[] deference." 486 U.S. at 600. Rather, § 122(a) lays out a broad and mandatory prohibition on the disclosure of patent applications, subject to narrow exceptions. And the "special circumstances" exception does not permit the Director to disclose applications whenever she deems such disclosure "advisable," as with the statute in *Webster*, but only if she determines that there are "special circumstances."

In other cases, the laws found unreviewable have also lacked the express prohibition so key to the structure of § 122(a). In *Almond Bros. Lumber Co. v. United States*, we found the United States Trade Representative's ("USTR") determination that certain trade benefits were "satisfactory" was not reviewable under § 701(a)(2). 721 F.3d 1320, 1325–27 (Fed. Cir. 2013). 19 U.S.C. § 2411

authorized the USTR to enter into agreements with foreign countries that, *inter alia,* "provide[d] the United States with compensatory trade benefits that . . . are satisfactory to the [USTR]." 19 U.S.C. § 2411(c)(1)(D). Section 2411 is not structured such that the USTR is expressly prohibited from entering agreements with foreign countries, subject to certain exceptions, as § 122(a) is with respect to the disclosure of patent applications. Similarly, § 122(a) differs from the regulation at issue in *Tamenut v. Mukasey,* which provided that the Board of Immigration Appeals ("BIA") "may at any time reopen or reconsider on its own motion any [appeal] in which it has rendered a decision. . . . The decision to grant or deny a motion to reopen or reconsider is within the discretion of the [BIA], subject to the restrictions of this section." 521 F.3d 1000, 1002 (8th Cir. 2008) (en banc) (quoting 8 C.F.R. § 1003.2(a)). This regulation committed the decision to reopen an appeal entirely to the BIA's discretion; it did not lay out an affirmative rule with a discretionary exception, as § 122(a) does. *Id.* And the language of the regulation—which permits the BIA to reopen an appeal "at any time," and expressly states that such a decision is "within the discretion of the [BIA]," is more discretionary on its face than § 122(a).[6] *Id.*

Finally, § 122(a) is distinguishable from 49 U.S.C. § 44702(d) (1997), which was found unreviewable in *Steenholdt v. FAA,* 314 F.3d 633, 638 (D.C. Cir. 2003). Section 44702(d)(2) permits the FAA Administrator to revoke an aircraft inspector's designation "at any time for any reason the Administrator considers appropriate."

---

[6] The BIA's decision to limit its power to grant motions to reopen appeals to "exceptional situations" does not make the language of the regulation irrelevant. *Tamenut,* 521 F.3d at 1004–05.

There is no express statutory bar on revoking an aircraft inspector's designation, as exists in § 122(a). Furthermore, the language of § 44702(d)(2) is broad and does not require any specific finding or determination, unlike § 122(a), which requires a determination that "special circumstances" exist. Finally, like the statute at issue in *Webster*, granting the FAA broad discretion to revoke an aircraft inspector's designation promotes the safety of the public; there is no similar public safety interest at play here.

Were we to accept the PTO's argument, the PTO could shield virtually any disclosure from judicial review, so long as the PTO claimed there were "special circumstances." Indeed, the PTO conceded at oral argument that if § 122(a) was unreviewable the PTO could disclose essentially any information about any patent application, with no review and no recourse, so long as there was no constitutional violation. *See* Oral Argument at 30:30–37, 34:40–57, *available at* http://oralarguments.cafc. uscourts.gov/default.aspx?fl=2014-1596.mp3. "We need not doubt the [PTO's] trustworthiness, or its fidelity to law, to shy away from that result. We need only know—and know that Congress knows—that legal lapses and violations occur, and especially so when they have no consequence." *Mach Mining*, 135 S. Ct. at 1652–53. Congress did not intend for the exception to swallow the rule.

B.     Statutory Standard for Reviewing the Director's Determination

The PTO also argues that § 122(a) is not reviewable because it contains no meaningful standard for reviewing the Director's determination that particular circumstances qualify as special. It is true that § 122(a) does not lay out a specific process or outline specific considerations for determining the existence of "special circumstances."

However, we do not think this means "there is no law to apply," such that the statute is unreviewable. *Overton Park*, 401 U.S. at 410. The second exception to § 122(a) permits review "in such special circumstances as may be determined by the Director." § 122(a). At the minimum, not taking into account the rest of § 122(a), this language indicates there is one concrete, reviewable requirement: the Director must determine that there are "special circumstances." The lack of specific factors outlined in the statute does not mean that the Director can disclose information without such a finding being reviewable. *See Mach Mining*, 135 S. Ct. at 1652. We reject the PTO's argument that the lack of enumerated factors means that the statute is unreviewable.

## C.    Scope of Review

Having found the PTO's "special circumstances" determination reviewable, we must next consider the scope of that review. Unsurprisingly, the PTO and Mr. Hyatt dispute the extent of our review. At oral argument, the PTO relied on *Mach Mining* to argue that our review should be limited to the bare minimum required by § 122(a)—"that the Director has, for example, not decreed that all patents are special circumstances, but has identified a discrete subset," without any consideration of the merits of the Director's determination. Oral Argument at 33:53–34:03. Mr. Hyatt disagrees, arguing instead that the PTO must show that "disclosure is necessary to serve an important statutory or public interest." Appellant's Br. 33. We hold that the proper scope of review lies somewhere between these two extremes. The PTO must not only determine that special circumstances exist, but also that the special circumstances justify the specific content to be disclosed. We review this determination for abuse of discretion.

In *Mach Mining*, the Supreme Court considered the extent to which courts could review the EEOC's informal conciliation process. 135 S. Ct. at 1653–56. In certain circumstances, the EEOC is required to "endeavor" to resolve employment discrimination complaints through "informal methods of conference, conciliation, and persuasion." 42 U.S.C. § 2000e-5(b). Only if the EEOC is "unable to secure from the respondent a conciliation agreement acceptable to the [EEOC]" itself may it sue the employer. *Id*. § 2000e-5(f)(1). Noting that the EEOC has extensive deference in how it conducts the conciliation process, including discretion over "the pace and duration of conciliation efforts, the plasticity or firmness of its negotiating positions, and the content of its demands for relief," the Supreme Court held that judicial review over these considerations "is not to enforce the law Congress wrote, but to impose extra procedural requirements. Such judicial review extends too far." *Mach Mining*, 135 S. Ct. at 1654–55. *Mach Mining* stands for the proposition that, when a statute provides an agency with "wide latitude" in an action, the scope of review over that action may be narrower. *Id*. at 1652.

The scope of review proposed by the PTO at oral argument—that our review of the PTO's "special circumstances" determination is limited to ensuring that the PTO has disclosed only a subset of all pending applications—is too narrow. *See* Oral Argument at 33:53–34:03. We do not think § 122(a), with its mandatory bar on disclosure and its two narrow exceptions, exudes discretion, as the PTO argues. Under the PTO's proposed standard, we would be required to affirm any disclosure by the PTO without considering the merits of the PTO's determination, so long as there was no constitutional violation and so long as the PTO disclosed only a subset of all pending applications. Under this standard, the PTO can easily evade § 122(a)'s affirmative bar on disclosure.

We will not interpret the PTO's discretion to determine that special circumstances exist so broadly as to make the rest of § 122(a) irrelevant. And, unlike in *Mach Mining*, further review does not conflict with or contradict other statutory requirements. *See* 135 S. Ct. at 1655.

Mr. Hyatt, by contrast, seeks too much when he argues the disclosure of the confidential material must be necessary to serve an important statutory or public interest. Nothing in the text of § 122(a) indicates that the Director's "special circumstances" determination must be driven by some statutory or public interest. To the contrary, the first statutory exception in § 122(a)—that disclosure is "necessary to carry out the provisions of an Act of Congress"—would be rendered superfluous under this interpretation.

Section 122(a) lays out a general prohibition against disclosure; any determination by the Director that special circumstances exist must be made in light of this bar against disclosure. The special circumstances must justify the otherwise-prohibited disclosure of confidential information. This means that the information that is disclosed must be linked to the "special circumstances" justifying the disclosure. We review for abuse of discretion the Director's determination that special circumstances exist, and that such special circumstances justify the disclosure of otherwise-confidential information. *See* 5 U.S.C. § 706(2); *Star Fruits*, 393 F.3d at 1281.

II.     "Special Circumstances" Determination

Having found the Director's "special circumstances" determination reviewable under the APA, we next consider whether the Director abused her discretion under the standard discussed above. We agree with the district court that the Director did not abuse her discretion when she found that special circumstances justified the PTO's

disclosure of confidential information in the Requirements.

The PTO issued the Requirements because of Mr. Hyatt's "unusually large number of duplicative and overlapping applications, with such a large number of redundant claims." J.A. 236. With more than 115,000 total claims spread out among only 12 distinct specifications, each family of applications has an average of 9,583 pending claims. The asserted priority relationships between Mr. Hyatt's applications are complex, with numerous overlapping applications. As the district court wrote, "[t]he Administrative Record confirms that the circumstances of [Mr. Hyatt's] patent applications and his prosecution history are extraordinary." *Hyatt*, 2014 WL 2446176, at *6. These circumstances are not just special—they are unique. We are aware of no other applicant with the same volume of claims as Mr. Hyatt, where those claims were filed before June 8, 1995, and where any patent stemming from those claims will have a term of 17 years, beginning from the date of issuance of the patent. The PTO's determination that special circumstances exist in Mr. Hyatt's applications is a narrow one, unlikely to affect other cases.

In light of the nature of Mr. Hyatt's applications, long-standing PTO rules justify the issuance of the Requirements. 37 C.F.R. § 1.75(b) provides that, in a patent application, "[m]ore than one claim may be presented *provided they differ substantially from each other and are not unduly multiplied*" (emphasis added). The PTO issued the Requirements to ensure that Mr. Hyatt's applications complied with § 1.75(b). Given the extraordinary number and duplicative nature of Mr. Hyatt's various pending applications, all drawn from the same 12 specifications, it was reasonable for the PTO to be concerned that the claims did not "differ substantially from each other," and that some claims were "unduly multi-

plied." § 1.75(b). In fact, in the Requirements the PTO demonstrates that across these applications, Mr. Hyatt has in numerous cases filed identical or nearly identical claims. This sort of redundant, repetitive claiming is inconsistent with § 1.75(b).

These special circumstances, which justify issuing the Requirements, also justify the disclosure of the confidential information contained in them. The Requirements are part of the prosecution history of the applications to which they are attached. As a result, certain Requirements are now part of the prosecution history of applications that are parents to issued patents, and therefore are publicly available. Rule 14(a)(1)(v).[7] The publication of the prosecution history of issued patents under Rule 11(a) and the prosecution history of pending parent applications to issued patents under Rule 14(a)(1)(v) will allow the public to understand the scope of the issued claims.

This reasoning applies not just to the Requirements generally, but also to the specific confidential information disclosed by the Requirements. Although the Requirements contain significant amounts of information typically kept confidential, Mr. Hyatt only challenges the PTO's disclosure of the full text of claim language from unpublished applications and the discussions of the nature

---

[7] Rule 14(a)(1)(v) authorizes the PTO to make parent applications to issued patents available to the public upon written request for a fee. It does not speak to whether the PTO may publish this information for free on the PTO internet portal. Nonetheless, it authorizes public disclosure of the information. Once disclosed, we do not think wider publication of the information will greatly harm the applicant. In this context, we see little distinction between making material publicly available for a fee and making that material available online for free.

of certain amendments to the pending applications in the Requirements. This is because much of the normally-confidential information is not confidential in Mr. Hyatt's case. The relevant specifications here have already been disclosed as part of the published prosecution history. *Hyatt*, 2014 WL 2446176, at *7; *see also* Appellees' Br. 15 n.9. Information about the filing dates, the serial numbers, and the number of claims in Mr. Hyatt's pending applications has also already been disclosed.

The special circumstances of Mr. Hyatt's case, and the volume and interwoven nature of his claims, also justify the disclosure of the substance of certain amendments to the pending applications in the Requirements. For example, the Requirement corresponding to the '812 application describes the prosecution history of other applications in the family, including specific information about several amendments to these applications. The PTO included this information to explain its suspicion that Mr. Hyatt's claims were "unduly multiplied." The specific nature of the amendments to the applications demonstrates how the number of Mr. Hyatt's claims has multiplied over the course of prosecution. Again, the disclosure of this information may help the public understand the claimed scope of the '812 application, as well as explain the requirements the PTO imposed upon Mr. Hyatt and any further constraints it places upon his applications. The PTO did not abuse its discretion when it found that the special circumstances of Mr. Hyatt's situation justify the disclosure of the substance of many of Mr. Hyatt's amendments to his applications.

We also note that given the large number of claims at issue, the newly disclosed information is minimal; the specifications have already been disclosed, as have the filing dates, the serial numbers, and the number of claims in Mr. Hyatt's pending applications. The PTO did not simply publish the applications in their entirety. It

identified certain confidential information as necessary to establish how Mr. Hyatt's applications were in conflict with § 1.75(b) and to justify the Requirements it was imposing on him. We hold that the Director did not abuse her discretion when she found that the "special circumstances" exception justified the otherwise-prohibited disclosure of the Requirements. Because we hold that § 122(a)'s "special circumstances" exception permits the PTO to disclose certain Requirements, we need not consider whether the disclosure of the Requirements is "necessary to carry out the provisions of an Act of Congress."

CONCLUSION

We *affirm* the district court's grant of summary judgment.

**AFFIRMED**

We award costs to the PTO.