FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GILBERT P. HYATT; AMERICAN
ASSOCIATION FOR EQUITABLE
TREATMENT, INC.,
    *Plaintiffs-Appellants*,

v.

OFFICE OF MANAGEMENT AND
BUDGET; MICK MULVANEY, in his
official capacity as Director of the
Office of Management and Budget,
    *Defendants-Appellees.*

No. 20-15590

D.C. No.
2:16-cv-01944-
JAD-EJY

OPINION

Appeal from the United States District Court
for the District of Nevada
Jennifer A. Dorsey, District Judge, Presiding

Argued and Submitted March 11, 2021
Las Vegas, Nevada

Filed May 20, 2021

Before:  Jacqueline H. Nguyen, Mark J. Bennett, and
M. Douglas Harpool,[*] Circuit Judges.

Opinion by Judge Nguyen

## SUMMARY[**]

### Paperwork Reduction Act

The panel affirmed the district court's summary judgment in favor of the Office of Management and Budget ("OMB") in an action challenging the OMB's determination that certain rules and regulations were not subject to the Paperwork Reduction Act ("PRA").

Plaintiffs contended that patent applicants should not have to comply with certain U.S. Patent & Trademark Office rules because they violated the PRA.  The PRA requires federal agencies engaged in "collection of information" to first submit them to the OMB for approval and assignment of a control number.  Patent applicants and patent examiners are guided by Patent Office regulations and the Manual of Patent Examining Procedure, which impose formatting, timing, and other procedural guidelines (the "Rules").  Plaintiffs argued that the Rules imposed "collections of information" within the meaning of PRA.  Plaintiffs requested that the OMB review certain Patent Office rules

---

[*] The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

because they required OMB approval and control numbers, and OMB denied their applications.

The panel held that the challenged Rules did not impose "collections of information" subject to the PRA's procedural requirements. The panel agreed with the government that the Rules did not impose the kinds of generalized solicitations of information that the PRA and its regulations were intended to cover, and they were not subject to PRA's approval and control number requirements.

The panel held that even if some of the Rules imposed "collections," the PRA's procedural requirements would still not apply to virtually any of the Rules because, under Exemption 6, the definition of "information" generally excluded "[a] request for facts of opinions addressed to a single person." 5 C.F.R. § 13203(h)(6).

## COUNSEL

Andrew M. Grossman (argued) and Mark W. DeLaquil, Baker Hostetler LLP, Washington, D.C., for Plaintiffs-Appellants.

Jennifer L. Utrecht (argued) and Daniel Tenny, Appellate Staff; Nicholas A. Trutanich, United States Attorney; Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellees.

**OPINION**

NGUYEN, Circuit Judge:

Gilbert P. Hyatt is the named inventor on hundreds of inter-related patent applications containing, at one point, over 100,000 claims. *See generally Hyatt v. U.S. Pat. & Trademark Off.*, 797 F.3d 1374, 1377 (Fed. Cir. 2015). Hyatt and the American Association for Equitable Treatment ("AAET") contend that patent applicants should not have to comply with certain U.S. Patent & Trademark Office ("USPTO") rules because, they allege, the USPTO is violating the Paperwork Reduction Act ("PRA"). The district court disagreed and found that the challenged rules are not subject to the PRA at all. We affirm.

Congress passed the PRA to reduce the burden imposed on the public when federal agencies seek information from private individuals. The PRA requires federal agencies engaged in "collections of information" to first submit them to the Office of Management and Budget ("OMB") for approval and an assignment of a control number. The PRA applies only to those "collections" seeking information by way of identical questions or requirements imposed on ten or more people. And collections of things other than "information" also need not receive OMB approval. For example, in keeping with the Congress's focus on collections imposed on ten or more people, the PRA and its regulations expressly exclude individualized communications from the PRA's requirements.

Against this backdrop, the USPTO examines thousands of patent applications every year. The USPTO's patent applications impose identical questions and disclosure requirements on ten or more people and are therefore subject to the PRA and bear OMB control numbers. After the initial

submission, though, every patent application takes a unique path. Many require extensive back-and-forth communications with USPTO patent examiners. These subject-matter experts correspond with each applicant concerning a particular patent application, asking for or commenting on specific deficiencies in that application. Applicants sometimes must respond, and in other instances can optionally provide additional information. This dialogue is tailored toward clarifying, amending, or correcting the application as it winds toward a final determination. Along the way, the applicant and examiner are guided by USPTO regulations and the Manual of Patent Examining Procedure ("MPEP"), which impose formatting, timing, and other procedural guidelines.

Hyatt and AAET argue that because these regulations and rules (the "Rules") apply to all patent applicants and allow for or require the submission of information, the Rules impose "collections of information" within the meaning of the PRA. According to Hyatt and AAET, patent applicants need not follow the Rules because the USPTO is violating the PRA by failing to obtain OMB approval and a control number each time the USPTO makes a request to an applicant during the back-and-forth communications process concerning a particular patent. OMB rejected this view and determined that the Rules are not subject to the PRA. Hyatt and AAET challenge OMB's determination as arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the Administrative Procedure Act ("APA"). We hold that the challenged Rules do not impose "collections of information" subject to the PRA's procedural requirements. Indeed, the PRA and the regulations expressly exclude from coverage individualized communications just like those between a patent examiner

and a patent applicant. We therefore affirm the district court's grant of summary judgment in favor of OMB.

## I. LEGAL FRAMEWORK

### A. The Paperwork Reduction Act

The PRA seeks to reduce the burden imposed on the public when the federal government engages in certain "collections of information." 44 U.S.C. § 3501(1). Any collection of information that is subject to the PRA must be approved by OMB and assigned an OMB control number. *Id.* § 3512(a).

As relevant here, a federal agency conducts a "collection of information" when it

> obtain[s], caus[es] to be obtained, solicit[s], or require[es] the disclosure to third parties or the public, of facts or opinions . . . regardless of form or format, calling for . . . answers to identical questions posed to, or identical reporting or recordkeeping requirements imposed on, ten or more persons . . . .

*Id.* § 3502(3). This includes collections that are "mandatory, voluntary, or required to obtain or retain a benefit" and "any requirement or request for persons to obtain, maintain, retain, report, or publicly disclose information." 5 C.F.R. § 1320.3(c).

"Information" is "any statement or estimate of fact or opinion." 5 C.F.R. § 1320.3(h). There are ten enumerated categories "generally" exempt from being defined as "information," except that "OMB may determine that any specific item constitutes 'information.'" *Id.* Most relevant

here, Exemption 6 excludes from the definition of "information" "[a] request for facts or opinions addressed to a single person." *Id.* § 1320.3(h)(6).

Under the PRA, any person may ask OMB "to review any collection of information conducted by or for an agency" to determine if the collection is covered by the PRA and requires a control number. 44 U.S.C. § 3517(b). OMB must respond to any non-frivolous request, *id.* § 3517(b)(1), and if it determines that the agency has been conducting an unapproved collection of information, it may take "appropriate remedial action, if necessary," *id.* § 3517(b)(2).

## B. The Patent Application Process

The USPTO is authorized to promulgate regulations governing the granting and issuing of patents. 35 U.S.C. §§ 2(a)(1), (b)(2)(A). The patent application process begins when a patent application is submitted using one of several uniform applications approved by OMB. *Id.* § 111; *see* 62 Fed. Reg. 53,132, 53,178 (Oct. 10, 1997) (noting OMB approval of initial patent applications); 85 Fed. Reg. 60,967, 60,968 (Sept. 29, 2020) (soliciting public comment on extending OMB-approved initial patent applications).[1] The parties agree that the initial application is subject to the requirements of the PRA.

After the application is submitted, the applicant's journey through the examination system may take several

---

[1] USPTO also sought and received OMB control numbers for other collections related to the patent examination process, including for applications for international patents, *see* 62 Fed. Reg. at 53,178, and covering a variety of standardized forms issued by the USPTO, 85 Fed. Reg. 60,975 (Sept. 29, 2020) (listing the forms covered by the collection).

paths, as determined by the USPTO's patent examiners. Once past the initial application stage, certain rules kick in, including the Rules at issue in this appeal: Rules 105, 111, 115, 116, 130, 131, and 132, and MPEP § 2173.05(n). Applicants first hear back from USPTO when a patent examiner sends correspondence, called an "office action," communicating a decision or asking for additional information. 37 C.F.R. § 1.104(a)(2). However, if an applicant wants to include additional information before receiving any office action, USPTO Rule 115 allows the applicant to submit a preliminary amendment to their application. *Id.* § 1.115(a).

A patent application may proceed through examination quickly, but the process sometimes involves significant back-and-forth between the examiner and the applicant. Throughout the examination process, USPTO Rule 105 authorizes the examiner to require the applicant to submit "such information" as the examiner determines "may be reasonably necessary to properly examine or treat" the application. *Id.* § 1.105(a).

The applicant has multiple opportunities to fix any shortcomings in their application. If the initial office action is adverse, USPTO Rule 111 requires the applicant to respond to the office action or be deemed to have abandoned the application. *Id.* § 1.111. The response must directly address the reasons for the adverse decision, including by describing the alleged errors in the examiner's decision. *Id.* The applicant may also amend their application to address the examiner's specific concerns. *Id.* And once a final decision has been made, but before any appeal of such decision, USPTO Rule 116 allows the applicant to again amend their application to address any shortcomings. *Id.* § 1.116. MPEP § 2173.05(n) further explains that if an

application is rejected for "multiplicity"—that is, because there are "an unreasonable number of claims [in the application] which are repetitious and multiplied, the net result of which is to confuse rather than to clarify"—the examiner must request that the applicant "select a specified [smaller] number of claims for purpose of examination." If the applicant does so, the examiner will re-examine the selected claims. *Id.* Finally, USPTO Rules 130, 131, and 132 allow an applicant to submit additional evidence through affidavits or declarations to overcome certain bases for an examiner's rejection. 37 C.F.R. §§ 1.130, 1.131, 1.132.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In August 2013, Hyatt requested that OMB review USPTO Rules 111, 115, and 116, arguing that those Rules imposed "collections of information" under the PRA and thus required OMB approval and control numbers. Because the Rules had not received OMB approval, Hyatt suggested that he was not required to maintain, provide, or disclose the information referenced by the Rules. In September 2013, OMB responded that it had already determined that "these collections are not subject to the PRA because what is collected is not considered 'information,' pursuant to [three] exemptions in OMB's PRA implementing regulation:" Exemptions 1,[2] 6, and 9.[3]

---

[2] OMB no longer relies on Exemption 1, 5 C.F.R. § 1320.3(h)(1), and the parties have not briefed this Exemption.

[3] Exemption 9 excludes "[f]acts or opinions obtained or solicited through nonstandardized follow-up questions designed to clarify responses to approved collections of information." 5 C.F.R. § 1320.3(h)(9).

In 2016, AAET submitted three requests to OMB, making similar arguments as to USPTO Rules 105, 130, 131, and 132, and MPEP § 2173.05(n).  OMB responded only that "the requests under Rule 1.105 are not subject to the PRA because the responses to questions submitted under Rule 1.105 are not 'information,' but instead are exempt under" Exemption 9.  In 2017, AAET again submitted three requests to OMB, making similar arguments as to the same Rules.  OMB responded that Rules 105, 130, 131, and 132, and MPEP § 2173.05(n) were all exempt under Exemptions 6 and 9, and Rules 130, 131, and 132 were additionally exempt under Exemption 1.

Hyatt and AAET sued, alleging that OMB's denial of their petitions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of the APA, because the challenged Rules were subject to the PRA and yet had not been reviewed or assigned a control number.

The parties filed cross motions for summary judgment. The district court found that the challenged Rules "constitute requests for facts or opinions addressed to a single person and are excluded from the scope of the PRA" under Exemption 6, and that OMB's denial of Hyatt and AAET's PRA petitions was therefore not arbitrary, capricious, or contrary to law.  The district court did not address the parties' arguments regarding Exemption 9, and granted summary judgment in favor of OMB.  Hyatt appeals.

## III.  STANDARD OF REVIEW

We have jurisdiction under 29 U.S.C. § 1291, and we "review de novo a challenge to a final agency action decided on summary judgment and pursuant to Section 706 of the APA." *Ctr. for Biological Diversity v. Esper*, 958 F.3d 895,

903 (9th Cir. 2020) (citing *Turtle Island Restoration Network v. U.S. Dep't of Com.*, 878 F.3d 725, 732 (9th Cir. 2017)).

## IV. DISCUSSION

## A. The Rules Do Not Impose "Collections of Information" and Are Not Subject to the PRA.

The district court correctly held that OMB's denial of Hyatt and AAET's PRA petitions was not arbitrary, capricious, or contrary to law. The challenged Rules are not subject to the PRA; they do not authorize "collections" because they do not impose "identical" questions or reporting, recordkeeping, or disclosure requirements. 44 U.S.C. § 3502(3); 5 C.F.R. § 1320.3(c).[4]

This conclusion flows from the statutory and regulatory definition of "collection," which focuses on the nature of the request—that is, the inquiry or prompt to which a member of the public is being asked to respond. Here, the Rules either impose formatting or submission guidelines or require or allow a particular patent applicant to respond to an office action. For example, Rule 105 requires a response to an examiner's individualized request for "such information as may be reasonably necessary to properly examine or treat" a particular application. 37 C.F.R. § 1.105(a). Rule 111 requires an applicant to reply to an adverse decision by "specifically point[ing] out the supposed errors in the examiner's action," "reply[ing] to every ground of objection

---

[4] Although we agree with OMB on this ultimate conclusion, we note that OMB's assertion that only collections that collect information using standardized forms impose "identical" requirements is incorrect. *See* 5 C.F.R. § 1320.3(c)(1) ("A 'collection of information' may be in any form or format, including . . . rules or regulations.").

and rejection in the prior Office action," and "present[ing] arguments pointing out the specific distinctions believed to render the claims . . . patentable." *Id.* § 1.111(b). Each of these requirements calls for a response to an individualized communication concerning a specific application. Rule 115 allows an applicant to make an optional preliminary amendment to an application in a specific format; no information is requested or required. *Id.* § 1.115(a). Similarly, Rules 130, 131, and 132 generally authorize submission of additional information—specifically, evidence regarding prior art. *Id.* §§ 1.130, 1.131, 1.132. Rules 130 and 131 impose some content and format requirements on any submission, while Rule 132 merely allows for the submission of "an oath or declaration" with no parameters. Rule 116 allows for amendment before appeal of a final action and allows three types of amendment: (1) "canceling claims or complying with any requirement of form expressly set forth in a previous Office action;" (2) "presenting rejected claims in better form;" or (3) if good cause is shown, "touching the merits of the application or patent under reexamination." *Id.* § 1.116(b). None of these options impose "identical questions . . . or reporting, recordkeeping, or disclosure requirements." 5 C.F.R. § 1320.3(c). Finally, under MPEP § 2173.05(n), the examiner decides the number of claims to which the applicant is limited, making the request individualized and not identical.

This conclusion also follows from a practical understanding of the patent application process. Patent examiners engage in thousands of conversations with patent applicants each year, subject to the Rules. This dialogue is tailored toward clarifying, amending, or correcting a single application as it travels toward a final determination. But while the Rules apply to every applicant, merely imposing

formatting requirements or providing for a uniform process is not sufficient to turn procedural rules into "collections" under the PRA or its regulations. An exemplar office action filed in the record demonstrates the point. There, the examiner of an initial application for a patent of a seed of soybean plant cultivar asks the applicant to submit information "reasonably necessary to the examination of [the] application" under Rule 105, including the "breeding methodology," "[t]he filial generation in which the instant plant was chosen," and "homozygosity or heterozygosity of the parents." These questions simply would not be asked of the inventor of, say, computer components, or of a soybean cultivator who submitted a more detailed application. It would be illogical and antithetical to the purposes of the PRA to require USPTO submit every such office action for OMB approval.

Moreover, many of the "identical" requirements that Hyatt and AAET point to merely require that responses to individualized office actions be highly specific. *See, e.g.*, 37 C.F.R. § 1.111(b) (Applicant must "specifically point[] out the supposed errors in the examiner's action" and "reply to every ground of objection and rejection in the prior Office action."); *id.* § 1.130(b) (Applicant "must identify the subject matter publicly disclosed and provide the date such subject matter was publicly disclosed."). There is nothing in the PRA or its implementing regulations that suggests that requiring specificity amounts to identicality.

For these reasons, we agree with the government that the Rules simply do not impose the kinds of generalized solicitations of information that the PRA and its regulations are intended to cover. Because the Rules do not impose "collections," they are not subject to the PRA's approval and control number requirements.

## B. Even If They Impose "Collections," Most of The Rules Are Exempted from the PRA Under Exemption 6.

Even if some of the Rules impose "collections," the PRA's procedural requirements would still not apply to virtually any of the Rules because, under Exemption 6, the definition of "information" generally excludes "[a] request for facts or opinions addressed to a single person." 5 C.F.R. § 1320.3(h)(6). Exemption 6's preclusion of individualized communications from the PRA accords with the statute's emphasis on identical requests sent to many people.

As a general matter, office actions—letters and calls from a patent examiner sent to an individual applicant—are quintessentially individualized. Requiring or allowing applicants to respond to such an individualized communication is not a collection of "information." For example, Rule 105 authorizes the examiner to require the applicant to submit whatever information the examiner thinks "necessary to properly examine or treat the matter." 37 C.F.R. § 1.105(a). Rule 111 requires the applicant to respond to an adverse office action by pointing out the alleged errors in the examiner's decision, making amendments to address the examiner's specific concerns, and more. *Id.* § 1.111. The other Rules generally also concern individualized communications to single applicants.[5]

---

[5] To be sure, Rule 115, which allows applicants to amend their application before receiving any office action at all, cannot be said to impose any "request." 37 C.F.R. § 1.115. Rule 115, therefore, does not fall under Exemption 6—but that is of no consequence, since as discussed above Rule 115, and all the challenged Rules, do not impose collections at all.

\* \* \*

Because the Rules do not impose collections subject to the PRA, the decision of the district court is

**AFFIRMED.**